UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-248-GWU

MICHELLE PATRICK,                                                                                      PLAINTIFF,

VS.                 **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                       DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

07-248  Michelle Patrick

        Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

    Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

07-248 Michelle Patrick

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

07-248  Michelle Patrick

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Michelle Patrick, was found by an Administrative Law Judge (ALJ) to have "severe" impairments. It was noted that she had chronic obstructive pulmonary disease with shortness of breath, asthma, and fatigue; was HIV positive; had an anxiety disorder, a personality disorder, and polysubstance dependence; had scoliosis of the thoracic spine and was status post fracture to the second metatarsal. (Tr. 24). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to return to her past relevant work as an inspector/assembler of toner cartridges, and therefore was not entitled to benefits. (Tr. 27-9). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff could perform any jobs if she were limited to "light" level exertion, could never crawl or climb ropes or ladders, could no more than frequently stoop, kneel, crouch, bend,

7

turn, or twist, and needed to avoid concentrated exposure to extreme cold or heat, humidity, fumes, odors, dust, or gases. (Tr. 788-9). Psychologically, she had the mental capacity to understand, retain, and carry out simple, repetitive tasks, maintain concentration in two-hour intervals, relate to others in an object-focused work environment in which contact with coworkers and supervisors was casual and infrequent, and could adapt and respond to routine changes in a work environment without excessive productivity demands. (Tr. 789). The VE responded that the plaintiff could return to her past relevant jobs as an inspector and printer cartridge assembler. (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff, who admitted to working in several short-term jobs since her alleged onset date (Tr. 761), testified that she was unable to work for several reasons, although the biggest problem was low back pain. (Tr. 765-6). She had carpal tunnel symptoms in her left hand, and an injury to her right foot which would require surgery. (Tr. 766, 769-70). She used inhalers two to three times a day for asthma, but continued to smoke. (Tr. 766, 774, 777). She was depressed about not being able to work and had recently been referred to a psychiatrist by a physician who followed her for HIV. (Tr. 772). She still felt depressed and cried constantly. (Tr. 786). The plaintiff admitted to a history of DUI charges (Tr. 758)

and had been through a detoxification program for hydrocodone dependence (Tr. 773), but was currently taking hydrocodone again for her foot pain and denied that she had a current substance abuse problem (Tr. 768-9). She had regained her driver's license but drove short distances only. (Tr. 758-9). However, she had been able to visit her mother in Florida the previous year, although she indicated that a friend had driven her down. (Tr. 782). She lived by herself and could take care of her personal needs, and did a few household activities such as making her bed, washing dishes, and doing laundry a little bit at a time. (Tr. 779-80).

Medical evidence in the transcript indicates that the plaintiff had been HIV positive since 1995, and was on no medications because of cost. (Tr. 238). However, no specific functional limitations appear to have been assigned due to this problem, and the plaintiff had worked despite it.

A neurological examination for back and foot pain in 2003 was negative for radicular symptoms, and an MRI of the lumbar spine did not show any herniated discs. (Tr. 267-8). Subsequently, the plaintiff was evaluated again in August, 2004 and an x-ray showed spondylolisthesis as well as marked facet hypertrophy, but EMG/NCV studies were normal. (Tr. 504, 507). The physician suggested using a brace and beginning a program of "core strengthening." (Tr. 504). He later intended to try epidural steroid injections. (Tr. 503). He did not list functional restrictions, although he did indicate that the plaintiff should try to wear her brace

at work, an indication that he did not necessarily feel that the condition was disabling. (Id.).

Dr. Michael Heilig, an orthopedist, treated the plaintiff for a foot injury which had resulted in a fractured right second metatarsal shaft, and performed an open reduction and internal fixation in January, 2005. (Tr. 498). She was allowed to return to work at the sedentary level in April, and reported that she was tolerating light duty work in May. (Tr. 490-1). The plaintiff continued to complain of pain and was given an injection, apparently with little good effect. (Tr. 486, 489). Dr. Heilig provided an impairment rating of one percent in December, 2005 and did not provide specific functional restrictions, although he indicated that the plaintiff continued to have pain in the foot with full weight-bearing. (Tr. 481). Later that month, he indicated that he planned to perform an operation for right foot exostosis[1] and neuroma[2] associated with the fracture. (Tr. 480).

Regarding the plaintiff's breathing problem, a recent pulmonary function test was interpreted as showing a severe airflow obstruction with a significant response

---

[1] Exostosis is defined as a benign bony growth projecting outward from the surface of a bone, characteristically capped by cartilage. Dorland's Illustrated Medical Dictionary, 27th Ed., p. 595.

[2] A neuroma is a tumor or new growth largely made up of nerve cells and nerve fibers; a tumor growing from a nerve. Dorland's Illustrated Medical Dictionary, 27th Ed., pp. 1129-1130.

07-248 Michelle Patrick

to bronchodilation. (Tr. 434). Once again, no examining source placed specific functional restrictions due to this problem.

The ALJ stated that he accepted the functional capacity analysis of a state agency reviewing source, Dr. James Ramsey, who reviewed the evidence in August, 2003. (Tr. 26). Dr. Ramsey's conclusions were affirmed by another state agency source, Dr. C. Hernandez, in August, 2004. (Tr. 375-85, 427-32). There is no evidence of specific functional restrictions from other sources, and while the court notes that Drs. Ramsey and Hernandez limited the plaintiff from even <u>moderate</u> exposure to pulmonary irritants, in contrast to the ALJ's restriction only on exposure to <u>concentrated</u> pulmonary irritants, any error is harmless in light of the fact that the plaintiff was found capable of returning to her past relevant work. She did not indicate that she was unable to continue this job because it contained pulmonary irritants. Moreover, the Sixth Circuit has noted that it is difficult to envision a significant environmental limitation due to a pulmonary condition where a claimant continues to smoke. <u>Mullins v. Secretary of Health and Human Services</u>, 836 F.2d 980, 985 (6th Cir. 1988).

Regarding the plaintiff's psychological problems, the plaintiff underwent a consultative evaluation by Dr. Harwell F. Smith on October 2, 2003. (Tr. 386). Dr. Smith noted that the plaintiff started to cry as she talked and gave the impression of being so emotionally distressed she did not want to think about problems long

enough to come up with answers. (Tr. 386-7). She gave a history of DUI arrests, the most recent being ten years previously, and indicated that she had been jailed in 1999 for trafficking Lortab. (Id.). She had been admitted to the Charter Ridge Psychiatric Hospital on two occasions, most recently in 1999. (Tr. 388). She was not currently on any medication and was not receiving any counseling. She stated she did not drink, and had been a substance abuser "a long time ago," but then admitted that she did use Lortab she bought "off the street," most recently "one or two weeks ago." (Tr. 389). She had also used the drug Klonopin two or three days previously. (Id.). Dr. Smith diagnosed an anxiety disorder, polysubstance dependence, and a personality disorder, with a current Global Assessment of Functioning (GAF) score of 50. (Tr. 389-90). A GAF score in this range reflects "serious symptoms." Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision) (DSM-IV-TR), p. 34. He opined that she would have a "poor" ability to interact socially, tolerate stress, and adapt or respond to the pressures of day-to-day work activity, and a "fair to poor" ability to show sustained concentration and persistence and interact socially with people at work. (Tr. 390). The terms "fair" and "poor" were not defined.

State agency psychological reviewers reviewed a portion of the record and concluded that the plaintiff would have a "moderately limited" ability to maintain attention and concentration for extended periods, perform acts within a schedule,

maintain regular attention, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 391-3, 422-5).

In December, 2005, the plaintiff began treatment with a psychiatrist, Dr. Cletus Carvalho, reportedly for depression and anxiety, although she reported that she had just lost her job at a factory the previous day due to back pain and inability to work. (Tr. 513). She gave a history of previous psychiatric admissions and past drug abuse, but admitted that she was taking Xanax from a "friend." (Tr. 513-14). Dr. Carvalho noted a depressed mood and constricted affect and listed an impression of depressive and anxiety disorders and benzodiazapine use. He assigned a GAF of 60, a score reflective of "moderate" symptoms per the DSM-IV-TR. He prescribed anti-depressant and anti-anxiety medications, which were increased on the next visit in January. (Tr. 510, 514). At the January office visit, however, it appears the plaintiff denies using any other substances, and the physician did not mention drug use or abuse among his diagnoses. (Tr. 510).

The plaintiff argues on appeal that the ALJ erroneously refused to accept the restrictions given by Dr. Smith, and did not provide any rationale for the findings he did make. Unfortunately for the plaintiff, Public Law 104-121 provides that an

13

individual shall not be considered to be disabled if alcoholism or drug addiction would be a contributing factor material to the determination. While Dr. Smith's limitations would be greater than those accepted by the ALJ, he included polysubstance dependence as a diagnosis and made no attempt to describe the plaintiff's functional restrictions in the absence of drug use. The same is true of the state agency sources. Moreover, the most recent examiner, Dr. Carvalho, also noted that the plaintiff was recently using a prescription medication which had not been prescribed to her. Accordingly, although the ALJ did not make his line of reasoning for not accepting the Smith restrictions or the state agency restrictions explicit, a remand would serve no useful purpose.

The plaintiff also argues that the ALJ improperly discounted the credibility of her subjective complaints, but a review of the decision shows that the ALJ reasonably concluded that "the record contains evidence to support her allegations but not to the degree averred." (Tr. 26). He noted that the plaintiff was able to take care of her personal needs, carry out some activities of daily living, and even travel out of state. (Tr. 25-6). While the plaintiff might disagree with the ALJ's conclusions, he did set forth a sufficient basis to support his findings.

Finally, the plaintiff cites to a large amount of additional evidence which was submitted to the Appeals Council, including evidence that her foot required further surgery and later developed an infection, and that she was limited to standing no

07-248 Michelle Patrick

more than four hours a day in December, 2006, approximately 11 months after the ALJ's decision. (Tr. 632). When evidence has been submitted to the Appeals Council, it may be considered by the courts only to determine whether it warrants a remand for additional consideration, and the plaintiff must show that the evidence was both new and material and there was good cause for not submitting it to the ALJ. Cline v. Commissioner of Social Security, 96 F.3d 146, 148-9 (6th Cir. 1996). In the present case, while the evidence is new and potentially material in that it provides evidence of greater limitations, these limitations do not directly relate to her abilities before the date of the ALJ's decision. Evidence that the plaintiff's condition worsened after the ALJ's decision does not provide a basis for remand. Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 685 (6th Cir. 1992).

    The decision will be affirmed.

    This the 28th day of May, 2008.

Signed By:
G. Wix Unthank
United States Senior Judge